**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

```
FILED

APR - 3 2009

CLERK, U.S. DISTRICT COURT
     NORFOLK, VA
```

STEPHANIE TERESE KNIGHTNOR,

        Plaintiff,

v.

                                           ACTION NO. 4:08cv59

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Stephanie Terese Knightnor ("Knightnor"), brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Knightnor's claim for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").[1]

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), for report and recommendation by order of reference filed December 23, 2008. For the reasons expressed herein, the Court recommends that the Commissioner's decision be AFFIRMED and the case be DISMISSED.

---

[1] Knightnor did not file an accompanying application for Disability Insurance Benefits. Knightnor has filed three prior applications for SSI, which were denied and were not appealed further. They are administratively final. 20 C.F.R. §§ 416.1405, 416.1487(a).

## I. <u>PROCEDURAL BACKGROUND</u>

On March 27, 2006, Knightnor filed an application for SSI alleging an onset of disability of March 27, 2006,[2] due to lupus and carpal tunnel syndrome ("CTS").   (R.[3] 21-22.)   Knightnor's application was denied by the Social Security Administration initially on June 19, 2006 (R. 50-54), and upon reconsideration on December 14, 2006 (R. 56-57).   On February 1, 2007, Knightnor requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration.   (R. 60.)   That hearing was held before the ALJ on November 2, 2007. (R. 19-27.)   Knightnor was represented at the hearing by her counsel, Barbara Evans-Yosief, Esq., and independent vocational expert, Paula C. Day, appeared at the hearing but did not testify.   (R. 19.)   On November 28, 2007, the ALJ issued a decision (R. 19-27), which found that while Knightnor was unable to return to her past employment, she retained the residual functional capacity to perform other jobs that existed in the national economy, and thus Knightnor was deemed to be not disabled and not eligible for SSI. (R. 26-27.)   On December 20, 2007, Knightnor requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review

---

[2] Knightnor's original onset date was August 30, 2005, but she amended the alleged date of disability to March 27, 2006 during the course of the November 2, 2007 hearing.

[3] "R." refers to the transcript of the administrative record of proceedings relating to this case.

("Appeals Council").   (R. 8-9.)   On March 26, 2008, the Appeals Council denied review of Knightnor's claim.[4]   (R. 2-4.) This makes the ALJ's decision the "final decision" of the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g).   20 C.F.R. §§ 404.981, 416.1481.

Knightnor brought the instant action seeking judicial review of the decision of the Commissioner denying her claim for SSI. Knightnor filed the instant complaint on June 24, 2008, which Defendant answered on September 03, 2008.  Knightnor filed a motion for summary judgment with a memorandum in support on November 03, 2008.   Defendant filed a motion for summary judgment and in opposition to Knightnor's motion for summary judgment with a memorandum in support on December 02, 2008.   Knightnor did not reply to Defendant's motion for summary judgment.   As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for decision based on the memoranda.

## II. FACTUAL BACKGROUND

Knightnor is a twenty-nine year old female, who was twenty-six years old on the date of her alleged onset of disability of March

---

[4] By Order dated March 26, 2008, the Appeals Council also confirmed the receipt of additional evidence that was made a part of the record.   (R. 5.)   This evidence consisted of a letter from Knightnor's counsel, dated December 20, 2007 (R. 10-12), with additional arguments in support of Knightnor's December 20, 2007 request for review (R. 7.), as well as medical progress reports from Dr. Katherine Treherne. (R. 14-15.)

27, 2006. (R. 26.) Knightnor has a high school education and is able to communicate in English. (R. 26.) She has a five-year old son for whom she is the primary care-giver; she cooks, does housework, irons, and shops. (R. 34.) Her past relevant work experience includes employment as a daycare teacher, janitor, companion, processor, waitress, housekeeper, and warehouse worker. (R. 26.) Knightnor alleges that as of March 26, 2006, she has been unable to work on account of her CTS and lupus. (R. 37-42.) Since that date, Knightnor has not engaged in substantial gainful activity. (R. 30.)

The ALJ found that, as of November 2, 2007, the date of Knightnor's hearing, Knightnor was able to lift and carry up to ten (10) pounds occasionally and ten (10) pounds frequently; stand and walk for less than two (2) hours in an eight-hour workday; sit for six (6) hours in an eight-hour work day; occasionally perform tasks that require stooping, kneeling, crouching, balancing, climbing, and crawling; and that normal breaks would be considered sufficient. (R. 22.) The ALJ found that Knightnor was unable to perform her past relevant work. (R. 26.) Knightnor must avoid hazardous work situations and extremes of heat and cold. (R. 22.) Ultimately, the ALJ found that as of November 02, 2007, despite the aforementioned limitations, Knightnor retained the residual functional capacity to perform sedentary work that existed in significant numbers in the national economy. (R. 22, 26.)

4

Accordingly, the ALJ found that Knightnor was not disabled as of November 02, 2007, and was thus not eligible for SSI as of that date. (R. 27.)

### III. STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. Id.

In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). "If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor." O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 545 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 251-52). Moreover, summary

5

judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set forth specific facts showing that there is a genuine issue for trial" with respect to that element.   Fed. R. Civ. P. 56(e)).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## IV.  STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner ultimately held that Knightnor was not under a disability within the meaning of the Social Security Act.   Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow.   Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).   This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the

Commissioner's decision. 42 U.S.C. § 405(g); <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam) (superceded in non-relevant part by 20 C.F.R. §§ 404.1517(d)(2), 416.927(d)(2)); <u>Hays v. Sullivan</u>, 907 F.2d 1453 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Hunter</u>, 993 F.2d at 34 (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. <u>Id.</u> (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. <u>Hays</u>, 907 F.2d at 1453 (citing <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979)). The court does not conduct a <u>de novo</u> review of the evidence nor of the Commissioner's findings. <u>Schweiker</u>, 795 F.2d at 345. In reviewing for substantial evidence, the court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citing <u>Hays</u>, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's designate, the ALJ)." <u>Craig</u>, 76 F.3d at 589 (quoting <u>Walker v. Bowen</u>, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits

7

will be reversed only if no reasonable mind could accept the record as adequate to support the determination.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  The issue before this Court, therefore, is not whether Knightnor is disabled, but whether the Commissioner's finding that Knightnor is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

## V. ANALYSIS

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(1)(a).  To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or

---

[5] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

any other substantial gainful activity[6] that exists in the national economy.  20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(2)(A).

## A. Sequential Disability Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. §§ 404.1520 and 416.920.  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).  Under this process, the ALJ must determine in sequence:

(1)  Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is not disabled and the inquiry is halted.

(2)  Whether the claimant has a severe impairment. If not, the claimant is not disabled and the inquiry is halted.

(3)  Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria.  If so, the claimant is disabled and the inquiry is halted.

(4)  Whether the impairment prevents the claimant from

---

[6] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

9

performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[7] and his vocational abilities. If so, the claimant is not disabled.

### 1. Steps One Through Three

In the instant case, the ALJ reached the fifth step of the sequence, at which point he determined that Knightnor was not disabled. The ALJ first determined in step one that Knightnor had not engaged in substantial gainful employment at any time since the alleged onset date of March 27, 2006. (R. 21.) The ALJ next found in step two that Knightnor's systemic lupus erythematosus with nephrotic syndrome is a severe impairment, but that her carpal tunnel syndrome is not a severe impairment. (R. 21-22.) At step three, the ALJ found that Knightnor does not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1 of the Regulations. (R. 22.)

### 2. RFC Determination

Prior to steps four and five, the ALJ determined Knightnor's residual functional capacity ("RFC"), which is defined as "[a]n

---

[7]"Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

individual's . . . capacity . . . to do physical and mental work activities on a sustained basis despite limitations from her impairments." (R. 20.) This included the ALJ's evaluation of the objective medical evidence in the record, including the findings of treating and other consultative physicians. (R. 22, 24-25.) The ALJ also considered Knightnor's non-severe impairment and subjective complaints of pain and other symptoms, as well as hearing testimony. (R. 20, 22-25.) Based on the evidence as a whole, the ALJ determined that Knightnor retained the RFC to perform sedentary work.[8] (R. 22.)

### a. Claimant's testimony

In reaching a conclusion about Knightnor's RFC, the ALJ gave consideration to Knightnor's testimony. The ALJ noted in his opinion that Knightnor's statements concerning her impairment and pain and the resulting impact on her ability to work are "not entirely credible." (R. 24.) The ALJ based this determination in part on Knightnor's testimony that she has full responsibility for her five year old child, and that on good days she can move the couch around, do chores, and walk for exercise. (R. 23-24.) The ALJ ultimately determined that Knightnor's "medically determinable impairment could reasonably be expected to produce the alleged

---

[8] Sedentary work is defined as work involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," as well as requiring only occasional walking and standing. 20 C.F.R. § 404.1567(a).

symptoms, but that [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 24.)

### b. Physician's opinions

In reaching a conclusion about Knightnor's RFC, the ALJ also considered the records and opinions of various physicians and other medical sources. The ALJ considered the medical opinion of Dr. Katherine Treherne, one of Knightnor's treating physicians whose records date from May 2006 to January 2007 (R. 281-83), indicating that Knightnor had flare-ups of lupus but that her face is clear. (R. 281-83). The ALJ noted that Dr. Franklin Seney, who saw Knightnor for her lupus from December 2006 until February 2007 (R. 261-80), indicated that Knightnor was developing Cushingold features but underwent left percutaneous renal biopsy without event, and that she was not complaining of joint pain. (R. 25.) The ALJ discussed emergency room records from Riverside Regional Hospital, where Knightnor went several times from September 2, 2005 through December 29, 2005, for joint pain and an allergic reaction to her lupus medication. (R. 196-238.) In addition, the ALJ looked at treatment notes from Dr. Jeffrey Carlson, who found that Knightnor experienced no tenderness at the distal radius and ulna, had no swelling at the wrist, and was not complaining of any significant pain during her visit with him. (R. 284.)

The ALJ also considered the medical opinion of Dr. Walter

12

Wallingford (R. 24.), who completed a physical capacity evaluation form on February 8, 2007. (R. 257-58.)  The record reflects that Dr. Wallingford found that Knightnor could lift and carry ten (10) pounds on an occasional basis and less than ten (10) pounds on a frequent basis; that she could stand and walk less than two hours during an 8-hour day; that she could sit without limit but with breaks during an 8-hour day; that she would need to take unscheduled breaks throughout the day; that she can occasionally twist, stoop, crouch, and climb stairs, but cannot climb ladders; that reaching, handling, fingering, feeling, and pushing/pulling will all be affected by the impairment; that she must avoid all exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, and hazards; and that she must avoid concentrated exposure to wetness, humidity, and noise.  (R. 257-58).

The ALJ also considered the medical opinion of Dr. Michelle Paulsen, D.O., who saw Knightnor for her lupus from May 2005 until July 2007 at Riverside Family Medicine. (R. 297-362.)   The Riverside Family Medicine office notes indicate that Knightnor was not in acute distress during any of her visits, although she did have lupus flare. (R. 297-362.) Dr. Paulsen also completed a physical capacity evaluation form on February 19, 2007 (R. 259-60), in which she stated that Knightnor could lift twenty (20) pounds occasionally and twenty-five (25) pounds frequently; that she could stand and walk for no more than two hours at a time; that she could

sit without limit during an 8-hour day; that she would need to take unscheduled breaks hourly during a work shift; that she could twist frequently, but stoop, crouch, climb stairs, and climb ladders only occasionally; that reaching would not be affected by her impairment, but that handling, fingering, feeling, and pushing/pulling would be affected; that she must avoid even moderate exposure to extreme cold and avoid concentrated exposure to extreme heat, wetness, humidity, and hazards; and that she could be exposed to noise and fumes, odors, dusts, gases, poor ventilation, etc.  (R. 257-60.)

The ALJ found that both Dr. Wallingford and Dr. Paulsen's findings were essentially consistent with a limited range of sedentary work.  (R. 25.) Although Drs. Wallingford and Paulsen found that Knightnor would be absent from work for more than three (3) days a month due to her impairments or treatment for her impairments and that Knightnor was unable to perform manipulation functions, the ALJ gave their findings limited weight on the basis that they were not supported by the medical evidence on record from the Riverside Family Medicine as well as Drs. Carlson and Seney. (R. 25.)

### 3. Step Four

The ALJ found in step four that Knightnor did not retain the RFC to perform the functional demands of her previous occupations, which included work as a daycare teacher, janitor, companion,

14

processor, waitress, housekeeper, and warehouse worker. (R. 26.)

#### 4. Step Five

It is the claimant who bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512, 416.912; Smith v. Califano, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of severe impairment, and lacks the RFC to return to her former employment, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national or local economy that the claimant could perform consistent with her RFC, age, education, and past work experience. Hunter, 993 F.2d at 35; Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).

In the instant case, the ALJ found that Knightnor was twenty-six years old on her alleged onset of disability date, which classifies Knightnor as a "younger individual" between 18-44 within the meaning of 20 C.F.R. 416.963. (R. 26.) The ALJ found that transferability of job skills is not material to the determination of disability in this case, because the Medical-Vocational Rules support a finding that Knightnor is not disabled, regardless of transferability of job skills. (R. 26.) Medical-Vocational Rule 201.28 directs a finding of "not disabled" on the basis that Knightnor has the RFC to perform the full range of sedentary work; additional non-exertional limitations do not effect the

15

occupational base of unskilled sedentary work. (R. 27.)   Although
the vocational expert did not testify, the ALJ found that there are
unskilled sedentary jobs that exist in significant numbers in the
national economy that Knightnor can perform. (R. 26.) Therefore, at
step five, Knightnor was found not to be disabled.   (R. 26-7.)

### B. Knightnor's Claims

Knightnor alleges that the ALJ's decision is not supported by
substantial evidence because the ALJ: (1) did not give proper
weight to the opinion of the treating physicians; (2) improperly
rejected Knightnor's own testimony; and (3) improperly failed to
ask questions of the vocational expert. Pl.'s Mem. at 5.

### 1. Medical Opinion of Plaintiff's Treating Physicians

Knightnor claims that the ALJ erred by improperly rejecting
the opinions of Knightnor's treating physicians, Drs. Wallingford
and Paulsen.

### a. Consideration of Treating Physician's Opinion

A treating physician's opinion as to the existence, nature, or
severity of a claimant's impairment is entitled to controlling
weight if it is well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with the
other   substantial   evidence   in   the   record.   20   C.F.R.
§§ 404.1527(d)(2), 416.927(d)(2).  Such an opinion should be given
"significantly less weight" when it is not supported by clinical
evidence or is not consistent with other evidence of record.

16

<u>Craig</u>, 76 F.3d at 590.  The ALJ has discretion to give less weight to the opinion of a treating physician where there exists persuasive contrary evidence.  <u>Hunter</u>, 993 F.2d at 35.

A treating physician's opinion as to a plaintiff's RFC, however, is not entitled to be given controlling weight or special significance.  Opinions on such issues are not "medical opinions," but rather opinions "reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(e).  Current regulations distinguish between an RFC, which only the Commissioner can determine and a "medical source statement about what the claimant can still do." <u>See</u> 20 C.F.R. §§ 404.1513(b)(6), 404.1546; Soc. Sec. Ruling 96-5p.  Given that such medical source statements are not technically "medical opinions," by definition they can never be given "controlling" weight.   <u>See</u> Soc. Sec. Ruling 96-5p.   There is "no special significance to the source of an opinion on [such] issues [that are] reserved to the Commissioner . . . ." 20 C.F.R. § 404.1527(e)(3).  As such, the ultimate question of whether a claimant is disabled under the Act is an issue reserved to the Commissioner, and therefore a statement that the claimant is "disabled" or "unable to work" may never be accorded controlling weight or any special significance.  <u>Id</u>.  Nevertheless, since they are medical opinions of a treating physician, such opinions must still be evaluated and may still be entitled to great weight.

17

Although a statement by a treating physician that the claimant is "disabled" or "unable to work" may never be accorded controlling weight or any special significance,

> opinions from any medical source on issues reserved to the Commissioner must never be ignored.  The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.

Soc. Sec. Ruling 96-5p; see also 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (stating that a treating source opinion on the issue of disability is not determinative of disabled status).  Once the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight, if any, to which the opinion is entitled:

(1) the length of treatment and frequency of examination;

(2) the nature and extent of the treatment relationship;

(3) the opinion's support by medical evidence;

(4) the opinion's consistency with the record as a whole; and

(5) the treating physician's specialization.

20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5).  These factors may not be omitted or disregarded by the ALJ in weighing the value of a treating physician's medical opinion.  See Burch v. Apfel, 9 Fed. Appx. 255, 259, 2001 WL 574634 (4th Cir. 2001) (per curiam) (stating that the ALJ "must consider" the factors set forth in 20

18

C.F.R. § 404.1527(d) when declining to give controlling weight to the opinion of a treating physician); Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000) (electing to join other federal courts in requiring ALJ to consider § 404.1527(d) factors before declining to give weight to treating physician's opinion and noting that ALJ should consider factors on remand); Winford v. Chater, 917 F. Supp. 398, 401 (E.D. Va. 1996) ("[I]f an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying the five factors identified in the regulation . . . .") (emphasis added). In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his attention.[9]   See 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

### b. Drs. Wallingford and Paulsen

Knightnor first claims that the ALJ failed to properly consider evidence in the record concerning Knightnor's future frequency of absence from work and inability to perform manipulation functions. Pl.'s Mem. at 15-16. In support of this claim, Knightnor recites various portions of the notes of Drs. Wallingford, Paulsen, Carlson, Williams, and Seney.

---

[9] For example, the ALJ must consider the medical source's degree of understanding of Social Security disability programs and evidentiary requirements, or the medical source's familiarity with the other information in the claimant's case.   20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

Contrary to Knightnor's assertions, the ALJ's opinion describes with particularity treatment records and notes by Drs. Wallingford, Paulsen, Treherne and Seney, in addition to the emergency records from Riverside Regional Hospital and treatment notes from Riverside Family Medicine.   (R. 24-25.)   The ALJ discussed the medical assessments of Drs. Wallingford and Paulsen in detail. (R. 24-25.) The ALJ also documented Knightnor's use of Prednisone, prescribed by both the Riverside Regional Hospital emergency room, Dr. Treherne, and Dr. Seney.  (R. 24-25.) The ALJ noted Knightnor's complaints of hair loss and lupus flare. (R. 24.) The ALJ discussed treatment notes from Dr. Carlson indicating that Knightnor had carpal tunnel release surgery that was healing well, with no tenderness at the distal radius and ulna, and no swelling at the wrist.  (R. 25.)

The ALJ did not, as Knightnor argues, ignore Dr. Carlson's evidence that Knightnor had pain in her hands and wrists.  (Pl.'s Mem. at 16-17.) Instead, the ALJ took account of the fact that several weeks after the surgery when Knightor went in for a follow-up visit with Dr. Carlson, he found that Knightnor was not having any significant problems with pain, and Knightnor could be as active as she liked. (R. 25.)

The ALJ also noted that, according to Dr. Seney's treatment notes, Knightnor underwent left percutaneous renal biopsy without event, and was no longer complaining of hair loss and joint pain.

20

(R. 25.) Knightnor contends that the ALJ "gleamed over" Dr. Seney's opinion that Knightnor is at risk for progressive renal failure related to lupus nephropathy. (Pl.'s Mem. at 18.)   The ALJ, however, noted that Dr. Seney prescribed Prednisone and Cellcept to improve Knightnor's renal prognosis. (R. 25.)

Finally, the ALJ discussed the treatment notes from Riverside Family Medicine, showing that as of July 2007, Knightnor stated that she was feeling well and had no complaints of pain. (R. 25.)

The Court therefore FINDS that there is substantial evidence in the administrative record to support the ALJ's interpretation of the medical evidence, including the opinions of Drs. Wallingford and Paulsen, and that the ALJ's determination of the weight given to Drs. Wallingford and Paulsen's opinions was reached based upon a correct application of the relevant law.

### 3. Credibility of Plaintiff's Testimony Regarding Her Impairments

Knightnor claims that the ALJ improperly rejected the testimony of Knightnor herself. Pl.'s Mem. at 19.  Specifically, Knightnor argues that the consistency of her statements and the other information in the record should support the credibility of her testimony. Id. at 19-20 (citing Batista v. Chater, 972 F. Supp. 211, 221 (S.D.N.Y 1997)).  To that end, Knightnor argues that she should be found to be disabled based on the substance of her testimony regarding her functional capabilities, which she argues is corroborated by the medical records and by the opinions of her

21

treating physicians.  Id. at 19-20.

Credibility determinations are reserved to the ALJ.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); see also Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) ("'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or on the Secretary's designate, the ALJ).'") (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)).  The Court's analysis is therefore restricted to determining if the ALJ's decision is supported by substantial evidence and whether the ALJ employed the correct legal standard.  See Craig, 76 F.3d at 589.

In evaluating a claimant's statements regarding pain or other symptoms in disability determinations, the ALJ must follow a two-step process: (1) determine whether there is objective medical evidence showing the existence of a medical impairment or impairments which could reasonably be expected to produce the pain or other symptoms alleged; and (2) if there is such evidence, evaluate the intensity and persistence of the claimant's symptoms, including pain, and the extent to which they affect her ability to work.  Soc. Sec. Ruling 96-7p.  In conducting the second step of the analysis, using all available evidence, the ALJ is required to make a credibility determination as to the claimant's statements

regarding the intensity, persistence, or functionally limiting effects of her symptoms whenever the claimant's statements "are not substantiated by the objective medical evidence" and suggest a greater degree of impairment than can be supported by the objective medical evidence alone. Soc. Sec. Ruling 96-7p; see also 20 C.F.R. § 404.1529(c)(4). Where the ALJ makes a negative credibility determination, he must specify the reasons for his decision and the evidence informing it. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

> It is not sufficient to make a conclusory statement that "the [claimant]'s allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the [ALJ] simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the [claimant] and to any subsequent reviewers the weight that the [ALJ] gave to the [claimant]'s statements and the reasons for that weight.

Soc. Sec. Ruling 96-7p.

In the instant case, the ALJ appropriately supported his negative credibility determination. In finding that Knightnor's testimony was not fully credible, the ALJ clearly specified the reasons for his decision and discussed the evidence supporting the decision. (R. 24-26.) The ALJ acknowledged that Knightnor's "medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that [Knightnor's] statements concerning the intensity, persistence and limiting effects of these

23

symptoms are not entirely credible." (R. 28.)  In particular, the ALJ noted several factors influencing this determination, including the minimal complaints of pain noted in the medical records, in particular; the examination by Dr. Carlson in July 2007, in which Knightnor did not complain of any significant pain; Knightnor's statement to Dr. Paulsen that she was feeling well and her mood was good; and Knightnor's testimony that she is her five year old child's primary caregiver, and that she cooks, does chores, and can move the couch and other things around (R. 24-25.)  On this basis, the Court finds there was substantial evidence for the ALJ to have concluded Knightnor's testimony was not credible.

As the finder of fact, the ALJ is able to make determinations regarding the credibility of witnesses.  The Court notes that the ALJ inquired as to Knightnor's claimed disabilities and current daily activities, and was able to compare her testimony with all of the medical evidence in the record.   "[B]ecause he had the opportunity to observe the demeanor and to determine the credibility of [Plaintiff], the ALJ's observations concerning these questions are to be given great weight."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  Furthermore, the ALJ may reject a plaintiff's testimony if it conflicts with the medical evidence.  Mitchell v. Bowen, 827 F.2d 387, 389 (8th Cir. 1987); see also Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991).

Accordingly, the Court FINDS that the ALJ employed the correct

24

legal standard in evaluating the credibility of Knightnor's testimony and subjective complaints of pain, and his credibility determination is supported by substantial evidence and was based on a correct application of law.

#### 4. The ALJ's Failure to Use a Vocational Expert

Knightnor also argues that the ALJ erred by not securing the testimony of the vocational expert in determining that Knightnor could perform unskilled sedentary work. Pl.'s Mem. at 21. Specifically, Knightnor asserts that the ALJ failed to properly consider the full extent of Knightnor's nonexertional impairments. Id.

Knightnor's assertions are not persuasive. The ALJ found that while Knightnor was able to sit for six (6) hours of an 8-hour workday and that she could stand or walk for less than two (2) hours in an 8-hour workday, which, in accordance with her other limitations, would make her capable of performing sedentary jobs. (R. 22, 26.) Based on this finding, which the Court has determined is amply supported by the record, there was no requirement for the ALJ to use a vocational expert. Indeed, the Social Security regulations contemplate the ALJ's taking administrative notice of the existence of sufficient jobs in the national economy as was the case here. See generally 20 C.F.R. § 416.966. Further, the applicable regulations make clear that the use of a vocational expert is within the Commissioner's discretion:

25

> If the issue in determining whether you are disabled is
> whether your work skills can be used in other work and
> the specific occupations in which they can be used, or
> there is a similarly complex issue, we may use the
> services of a vocational expert or other specialist.  We
> will decide whether to use a vocational expert or other
> specialist.

20 C.F.R. § 416.966(e).  The ALJ's determination of Knightnor's

ability to sit or stand is not so "unusual" as to require the use

of a vocational expert.  See SSR 83-12 ("Unskilled types of jobs

are particularly structured so that a person cannot ordinarily

stand or sit at will.  In cases of unusual limitation of ability to

sit or stand, a [vocational expert] should be consulted to clarify

the implications for the occupational base.")  Accordingly, the

Court FINDS that it was well within the discretion of the ALJ not

to use a vocational expert in determining Knightnor's RFC.[10]

### E. Conclusion

The ALJ's determination that the medical opinions of

Knightnor's treating physicians, Drs. Wallingford and Paulsen, were

not entitled to controlling weight was supported by substantial

evidence and based upon a correct application of the relevant law,

as was the ALJ's determination of the appropriate weight to be

given those opinions. The ALJ's determination that Knightnor's

---

[10] The Court also rejects Knightnor's argument that the ALJ
failed to consider Knightnor's non-exertional limitations. The ALJ
explicitly found that, because Knightnor has the residual
functional capacity to perform the full range of sedentary work,
"[t]he additional limitations have little or no effect on the
occupational base of unskilled sedentary work," prompting him to a
finding of "not disabled." (R. 27.)

26

testimony regarding her complaints of pain and her various symptoms was not credible was likewise supported by substantial evidence and based upon a correct application of the relevant law.  Finally, the ALJ's finding that Knightnor retained the capacity to perform sedentary work was also supported by substantial evidence and based upon a correct application of the relevant law.

## VI.  RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be AFFIRMED, and the case be DISMISSED.

## VII.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof.  See Fed. (R. Civ. P. 72(b).

2.  A district judge shall make a de novo determination of those  portions  of  this  report  or  specified  findings  or

27

recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

United States Magistrate Judge

Norfolk, Virginia

April 2 , 2009

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Barbara Evans-Yosief, Esq.
Barbara Evans-Yosief, Attorney at Law
2013 Cunningham Drive, Suite 238
Hampton, Virginia 23666
Counsel for Plaintiff

Kent P. Porter, Esq.
Assistant United States Attorney
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Counsel for Defendant

Fernando Galindo,
Acting Clerk of Court

By: _____

Deputy Clerk

April 3 , 2009

29